**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In the Matter of: ) | No. 08-2329-PHX-MHM |
| ) | |
| James Henderson Sanders, ) | Bankruptcy Case No. 2:07-bk-01734-RTB |
| ) | |
| Debtor. ) | |
| _____) | **ORDER** |
| James Henderson Sanders, Debtor, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | |
| ) | |
| Progressive Casualty Insurance Company,) | |
| an Ohio corporation, et al., ) | |
| ) | |
| Appellee. ) | |
| ) | |
| _____) | |

Currently pending before the Court is Debtor's Appeal from the Arizona Bankruptcy Court's "Order Denying Debtor's Motion to Dismiss Chapter 7 Bankruptcy Case and Continue Rule 2004 Examination" (Dkt.#13), Debtor's Motion to Add Further Supplemental Exhibit to Appellants Informal Reply (Dkt.#21), Debtor's Motion to Withdraw the Motion to Add Further Supplemental Exhibit (Dkt.#24), and Debtor's Motion for Oral Argument (Dkt.#23). After reviewing the pleadings and record excerpts submitted for purposes of this appeal, and having determined that oral argument is unnecessary, the Court issues the following Order.

I.  **Background**

The facts leading up to this bankruptcy appeal demonstrate that James Henderson Sanders ("Sanders") is no stranger to bankruptcy proceedings.[1]

**A. Sanders' Prior Proceedings**

On January 27, 1997, Sanders was convicted of mail fraud in violation of 18 U.S.C. § 1341 and aiding and abetting under 18 U.S.C. § 2. (Dkt.#16 at 4) He was sentenced to prison for 51 months and was ordered to pay restitution of $4,106,657 to Progressive Casualty Insurance Company ("Progressive"). (Dkt.#16 at 4) He subsequently filed for Chapter 7 Bankruptcy relief on May 12, 1997 in an Oregon Bankruptcy Court (Case No. 97-33882-TMB7). (Dkt.#16 at 4) After he was granted a discharge, he sought a declaration that the restitution that he owed to Progressive was or should have been discharged in the Oregon Bankruptcy case. (Dkt.#16 at 4) The Bankruptcy Court specifically found that the restitution owed to Progressive was not dischargeable in bankruptcy. (Dkt.#16 at 4) Sanders appealed to the Ninth Circuit Bankruptcy Panel, which dismissed his appeal. (Dkt.#16 at 5)

On October 14, 2005, Sanders again filed for bankruptcy relief under Chapter 7 in an Arizona Bankruptcy Court. (Dkt.#16 at 5) Progressive filed a motion for summary judgment that the restitution obligation owed to it by Sanders was not dischargeable under principles of res judicata. (Dkt.#16 at 5) The Arizona Bankruptcy Court agreed and granted this motion for summary judgment. (Dkt.#16 at 6) The Ninth Circuit Bankruptcy Appellate Panel affirmed this decision on March 30, 2007. (Dkt.#16 at 6)

---

[1] The following facts are taken from Progressive's Opening Brief, which in turn, cites to documents collected in either Sanders' or Progressive's Excerpts of Record. Debtor Sanders fails to challenge the facts presented or present any alternative versions of the facts; thus, this Court has no choice but to rely on the facts presented by Progressive (and in any case, the Court's review of the documents of record presented by Sanders appears to support the version of the facts developed by Progressive).

## B. The Present Bankruptcy Action

On April 18, 2007, Sanders filed another Arizona bankruptcy case (the present case), this time under Chapter 11 of the United States Bankruptcy Code, on the eve of a scheduled debtor's examination in the Maricopa County Superior Court. (Dkt.#16 at 6)

### (1) The Missed Rule 2004 Examinations that Led to Sanders Being Held in Contempt by the Bankruptcy Court

Progressive applied for a Rule 2004 Examination of Sanders, and the Bankruptcy Court approved. (Dkt.#16 at 6) The Rule 2004 Examination was scheduled for May 29, 2007, but Sanders failed to appear, despite having received notice of examination. (Dkt.#16 at 7) The Rule 2004 was rescheduled, this time for June 5, 2007, but Sanders failed to appear again, despite having received notice of this examination as well.

Progressive moved for an order to show cause why Sanders should not be held in contempt for his failure to appear at the Rule 2004 examination. (Dkt.#17, Exh. B at 1) In response, the Bankruptcy Court ordered Sanders to deliver to Progressive a number of documents to Progressive no later than March 6, 2008 and to appear for the Rule 2004 Examination on March 13, 2008. (Dkt.#16 at 7) Sanders did neither, and the Bankruptcy Court held him in contempt for failing to comply with its order. (Dkt.#16 at 8) The Bankruptcy Court's order provided that Sanders could purge the contempt order if he delivered the requested documents and appeared at the Rule 2004 Examination. (Dkt.#16 at 8) At the time scheduled for the August 8, 2008 Rule 2004 Examination, Sanders confirmed that he would deliver the requested documents to Progressive on or before August 19, 2008. However, he did not. (Dkt.#16 at 4)

### (2) The Conversion to a Chapter 7 Case

While the dispute regarding the Rule 2004 Examination was unfolding, the Trustee filed a Motion to Convert Case to Chapter 7 Proceedings on May 9, 2008. The U.S. Attorneys' Office and Progressive joined the Trustee in this request. Sanders' Chapter 11 case was converted to a Chapter 7 one on August 11, 2008. Jill Ford was appointed Chapter 7 Trustee of Sanders' bankruptcy estate. (Dkt.#16 at 9)

1     On August 18, 2008, Sanders filed a Motion to Dismiss, which sought the dismissal of his bankruptcy case, as well as an order that would continue or defer the Rule 2004 examination. (Dkt.#16 at 4) The Bankruptcy Court conducted a hearing on the Motion to Dismiss on October 8, 2008, and denied the motion on December 2, 2008. (Dkt.#16 at 9) Sanders subsequently filed this appeal. (Dkt.#16 at 9)

## II. Discussion

### A. Jurisdiction & Standard of Review

A district court may hear appeals from "final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges." 28 U.S.C. § 158(a). A Bankruptcy Court's findings of fact are reviewed under the "clearly erroneous" standard, and its conclusions of law are reviewed *de novo*. In re Compton Impressions, Ltd., 217 F.3d 1256, 1260 (9th Cir. 2000); Fed. R. Bankr. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."). A third standard of review attaches when a Bankruptcy Court makes a decision that is within its discretion under the Bankruptcy Code; such decisions will not be set aside unless there is plain error or abuse of discretion. See In re Rosson, 545 F.3d 764 (9th Cir. 2008) (explaining that a bankruptcy court's decision to deny debtor's request for dismissal of his Chapter 13 case and to convert the case from Chapter 13 to Chapter 7 was reviewed for an abuse of discretion); In Re Sherman, 491 F.3d 948, 969 (9th Cir. 2007) ("[W]e review a bankruptcy court's decision to grant or deny a motion to dismiss for misconduct that constitutes 'cause' for abuse of discretion.").

### B. Analysis

Sanders appeals from the Bankruptcy Court's denial of his motion to dismiss his Chapter 7 bankruptcy case and continue his Rule 2004 examination. (Dkt.#13)

/ / /

**(1) Conversion from Chapter 11 (Reorganization) to Chapter 7 (Liquidation)**

Sanders argues that the Bankruptcy Court inappropriately granted the U.S. Trustee's request for a Chapter 7 conversion instead of dismissing his Chapter 11 proceeding as he requested. (Dkt.#13 at 4-5)

Under 11 U.S.C. § 1112(b)(1), "on request of a party in interest, and after notice and a hearing," unless unusual circumstances are present and identified by the court, a bankruptcy court "shall convert a case under [chapter 11] to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of the creditors and the estate, if the movant establishes cause." This section allows a bankruptcy court to convert a bankruptcy case from Chapter 11 to Chapter 7, or to dismiss a case, as long as the party asking for the conversion establishes cause. It also permits a bankruptcy court to dismiss a bankruptcy case; however, the decision of whether to convert or dismiss must be guided by "whatever is in the best interest of the creditors and the estate." The legislative comments to this section summarize that a "bankruptcy court is permitted to convert a reorganization case to a liquidation case or to dismiss the case, whichever is in the best interest of creditors and the estate, only for cause." H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 405, 406.

Thus, to be affirmed, the bankruptcy must have had cause for its decision to convert the case from Chapter 11 (Reorganization) to Chapter 7 (Liquidation). The term "cause" is defined by 11 U.S.C. § 1112 to include, among other things, "failure to comply with an order of the court," "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this title," "failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by debtor," and "failure to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any). 11 U.S.C. § 1112(b)(4)(E),(F),(G) and (H).

1     Here, it is clear that "cause" existed; Sanders had failed to attend no less than three scheduled Rule 2004 Examinations, clearly falling withing within the subsection (b)(4)(G) definition of "cause" ("failure to attend . . . an examination ordered under Rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor."). There is no indication in the record that Sanders had good cause for failing to attend any of the scheduled Rule 2004 examinations. Therefore, the Bankruptcy Court clearly had "cause" either to convert Sanders' bankruptcy case from Chapter 11 (reorganization) to Chapter 7 (liquidation) or to dismiss the case.

### (2)     **Dismissal Prior to Conversion**

    Sanders does not appear to dispute any of the above, but argues that the Bankruptcy Court erred in converting the case from Chapter 11 to Chapter 7 without giving him the chance to argue for the alternative sanction of having his case dismissed. (Dkt.#13 at 3) However, it appears that Sanders *was* given the opportunity to argue for dismissal. The Motion to Convert or Dismiss was filed on April 9, 2008 (Dkt.#14 at 11). Sanders does not assert that he failed to receive notice of this motion. The Court did not grant the motion until August 11, 2008. Sanders could have filed a response to the motion that argued in favor of dismissal over conversion at any point during the intervening four months; however, he apparently did not. As such, he cannot now complain that the Bankruptcy Court failed to allow him to respond prior to the decision to convert. In addition, Sanders was given several post-Chapter 7 conversion chances to argue his case for dismissal. He was allowed to present these arguments at the hearing on October 8, 2008. (Dkt.#17, Exh. D at 5-7) He was also permitted to file a brief regarding this issue after the hearing (Dkt.#14 at ER 63 ["Debtor's Amended Reply to Progressive's 'Objection to Debtor's Motion to Dismiss and Continue Rule 2004 Examination' Occasioned by Post Reply Joinders"]). The Bankruptcy Court clearly permitted Sanders to present his arguments in favor of dismissal before rejecting these arguments on December 9, 2008.

/ / /

### (3) Denial of Sanders' Motion to Dismiss After Conversion

The crux of Sanders' argument is that the Bankruptcy Court erred by failing to allow him to dismiss his case when he realized that it was going to be converted from Chapter 11 to Chapter 7. However, Sanders points to no case law or statute that confers an absolute right for debtors to dismiss their bankruptcy petitions at whim. On the contrary, 11 U.S.C. § 1112(b)(1) compels a bankruptcy court to consider which action is in the best interest of the estate and the creditors. A Ninth Circuit case explicitly denies that a debtor has any such absolute right to dismissal. In re Bartee, 317 B.R. 362, 366 (9th Cir. 2004) ("Debtors argue they have an absolute right to dismissal of their chapter 7 case. This is plainly wrong."). The fact that the Bankruptcy Court chose to convert the case from Chapter 11 to Chapter 7 rather than to dismiss the case as Sanders desired is error only if the Bankruptcy Court abused its discretion in refusing to dismiss the case. In re Leach, 130 B.R. 855, 856 (9th Cir. 1991) (explaining that the "denial of a voluntary motion to dismiss rests within the sound discretion of the judge and is reversible only for an abuse of discretion").

"While a debtor may voluntarily choose to place himself in bankruptcy, he does not enjoy the same discretion to withdraw his case once it has been commenced." Id. at 857 n.5 (quoting In re Klein, 39 B.R. 530, 532 (Bankr. E.D.N.Y. 1984)). If dismissal will prejudice interested parties, a court may refuse to allow a debtor to dismiss the petition. Leach., 130 B.R. at 858 (affirming the bankruptcy court's refusal to allow debtor to dismiss case where prejudice would have resulted to debtor's creditors). See also In re Simmons, 200 F.3d 738, 743 (11th Cir. 2000) ("When dismissal will only allow the Debtor to hinder creditors, secret assets, and further the Debtor's abuse of the system, dismissal of her voluntary petition is not warranted."); In re Atlas Supply Corp., 857 F.2d 1061, 1063 (5th Cir. 1988) (no abuse of discretion in denial of dismissal where dismissal would have prejudiced creditors).

The Ninth Circuit has explained that debtors who seek the protection of the bankruptcy court "must also assume the responsibilities attendant to this protection, including accounting for the assets and completing schedules in good faith, and . . . the debtor may not engage in questionable or fraudulent conduct and then dismiss the case once such conduct is

1 discovered." Bartee, 317 B.R. at 366-67 (quoting 9A Am.Jur.2d. Bankruptcy § 1020) (explaining that debtor's failure to comply with trustee's request for additional information about its assets, income, prepetition transfers and alleged gambling losses would have constituted an independent basis for affirming the refusal to dismiss).

Here, Sanders failed to attend properly noticed Rule 2004 Examinations at least three times, causing the Bankruptcy Court to hold him in contempt. He also failed to cooperate with the Trustee by timely providing financial information such as a list of his personal property, real property, federal and state income tax returns, and other information. Because of these failures, his creditors were understandably concerned that the dismissal of his bankruptcy case would result in greater delay and difficulty in collecting on their debts. Thus, the Bankruptcy Court's decision to deny his motion to dismiss was not an abuse of discretion; Sanders simply did not meet his burden of establishing that there would be no legal prejudice to his creditors resulting from the dismissal of his bankruptcy case.

**(4) Refusal to Defer Debtor's Exam under Rule 2004**

Finally, Sanders had already failed to show up to at least three properly noticed Rule 2004 examinations. It was not an abuse of discretion for the Bankruptcy Court to refuse to allow Sanders to continue the Rule 2004 examination yet again, particularly since Sanders provided no reason that would constitute "good cause" for rescheduling it.

**(5) Miscellaneous Other Arguments**

Sanders also alleges that Progressive Casualty Insurance comes before the Court with unclean hands based on "their introduction and continued reliance on false statements and documentary evidence" (Dkt.#13 at 5). However, he does not identify the statements he alleges are false. He further argues that Progressive "blatant[ly] and persistent[ly] violat[ed] the automatic stay" in a previous case, although he never cites to or provides copies to the court of the prior automatic stay or explains how Progressive allegedly violated it. (Dkt.#13 at 6) As such, the Court rejects these arguments as they are unsupported by any legal or factual authority.

Sanders also argues that the motion schedule imposed by the Bankruptcy Court was procedurally deficient because it violated Local Bankruptcy Rule (Amended March 1, 2007) 9013-1(C), which reads as follows:

> (C) Response and Reply Times for Motions in Adversary Proceedings. Unless otherwise set forth in the Rules, the Local Rules, the notice prescribed in paragraph (j) or an order of the court, in an adversary proceeding the party responding to a motion shall have 15 days after service within which to serve and file a responsive memorandum, and the moving party shall have 10 days after service of the responsive memorandum to serve and file a reply.

He also argues that the motion schedule violated his "fundamental right to a surreply in light of the Chapter 7 Trustee raising in the first instance both imputed facts and case law Appellant never had a chance to respond to prior to the matter being taken under advisement." (Dkt.#13 at 6) However, Sanders never identifies *which* motion schedule he is talking about, cites to the motion schedule, or even identifies the specific topic of the motion concerned. While the Court has made every effort to construe Sanders' arguments liberally, it cannot search the record and craft his arguments for him. See Aguasin v. Mukasey, 297 Fed. Appx. 706 (9th Cir. Oct. 30, 2008).

Sanders also argues that "the Bankruptcy Judge misunderstood Appellant [sic] request merely to respond to the untimely 'Joinders' to Progressive Casualty Insurance Company's 'Objection' asserted in writing by the Chapter 7 Trustee and orally by the U.S. Government, through assuming erroneously that Appellant had wished to assert facts or case law beyond that already cited." (Dkt.#13 at 5) However, he never explains why the Bankruptcy Court's misunderstanding of his request would be reversible error or provides any citations to document the so-called erroneous assumption. Even assuming, for the sake of argument, that the Bankruptcy Court had misunderstood Sanders' request, Sanders would still have to explain why this misunderstanding was reversible error. However, he has not even explained what it is that he actually intended to communicate to the bankruptcy judge, when this misunderstanding occurred, or how it affected the ultimate outcome of the case. As such, this Court rejects this argument.

1   Finally, Sanders argues that "none of the case law cited in support of any aspect of the 'objections and/or joinders' involved corresponded to Appellant's unique factual situation." While this Court appreciates that factual situations are rarely identical in every detail, Sanders does not explain this assertion in any manner. He does not cite to any case that is purportedly inapplicable. Nor does he explain the differences between the cases that allegedly make the case law inapplicable to him. As explained above, while this Court construes the arguments of pro se litigants liberally, it cannot search the record and make their arguments for them. Aguasin v. Mukasey, 297 Fed. Appx. 706 (9th Cir. Oct. 30, 2008) ("Although we liberally construe the briefs of pro se appellants, we also require that arguments must be briefed to be preserved.") (quoting Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993)).

**C. Conclusion**

For the reasons explained above, the bankruptcy court's decision below is affirmed.

**Accordingly,**

**IT IS HEREBY ORDERED** that the December 9, 2008 Order of the Bankruptcy Court denying Debtor's Emergency Motion to Dismiss Chapter 7 Bankruptcy Case and Continue Rule 2004 Examination is AFFIRMED.

**IT IS HEREBY ORDERED** granting Debtor's Motion to Withdraw his Motion to Add Further Supplemental Exhibit (Dkt.#24).

**IT IS HEREBY ORDERED** denying as moot Debtor's Motion to Add Further Supplemental Exhibit (Dkt.#21).

**IT IS HEREBY ORDERED** denying as moot Debtor's Motion for Oral Argument (Dkt.#23).

DATED this 25th day of September, 2009.

_____
Mary H. Murguia
United States District Judge